## Mauck Estate

*Aaron S. Swartz, 3rd, Henry C. Beerits, H. Peter Somers*, and *W. Wesley Nagle*, for accountants.

*David M. Jordan*, for legatee.

*M. Paul Smith*, for guardian and trustee ad litem.

TAXIS, P. J., January 22, 1970.—The following questions have been submitted for adjudication:

Whether the marital trust, created under paragraph third of the will, represents a fractional share so as to carry with it a portion of the appreciation in the estate assets during the period of administration as contended for by the accountants and Victor Mauck, Jr., or, whether, as the guardian argues, such marital trust represents a pecuniary share so that all such

appreciation inures to the benefit of the residuary trust provided for under paragraph fourth of the will.

Victor Mauck died on December 2, 1956, and, under his will, made a bequest of tangible personal property to his spouse, Ethel C. Mauck, and then divided the residue into three trusts. The first trust, known as the marital trust, was to consist of *"such percentage* of my residuary estate as will produce the maximum marital deduction . . ." In this marital trust, Ethel C. Mauck was the donee of a general power of appointment and she exercised this power of appointment in her will in favor of her son, Victor Mauck, Jr. She died on January 11, 1966.

The other two trusts created by decedent's will represent the division of "the balance of my residuary estate," one of which is 85 percent thereof for the lifetime benefit of decedent's son, Victor Mauck, Jr., then to his widow until her death or remarriage, to be followed by distribution of the principal to Victor Mauck, Jr.'s then living issue per stirpes. The final 15 percent of the residue was to be set aside in a trust for decedent's daughter, Patricia Mauck Crookes, and upon her death to her issue per stirpes.

The question concerning the nature of the marital trust was very ably argued and briefed by counsel for all sides. Althouse Estate, 404 Pa. 412, is submitted to the court by the guardian ad litem as compelling a conclusion that this marital trust was, in fact, a pecuniary share rather than a fractional share. With this conclusion, the court disagrees. The language in Althouse Estate is entirely different from the language used by this testator.

In the instant will, testator uses the word "percentage" and this connotes a fraction, or a fractional share. Although decedent did not use the words "fractional share," he used the word "percentage," which this court concludes means practically the same thing. It

is a proportion, a fraction; namely, a percentage of the residue, and the court, therefore, concludes that this marital trust was a fractional share and, therefore, appreciation accruing must be apportioned between the marital and the residuary trusts.

Another question has been submitted to the court relating to whether interest assessed with regard to the Federal estate tax is to be apportioned against principal or income of the residuary trust. The reason why interest was assessed is the fact that the Federal estate tax was paid several years after the ordinarily due date because of lack of liquidity in the assets of the estate. On this question the accountants take the position that principal should bear the burden of such interest charges, whereas the guardian suggests that it should be charged against income for the reason that the estate derived income on assets employed to pay estate obligations and since interest on the tax did not begin to accrue until 15 months after death, it is only reasonable that all interest on Federal estate tax should be charged to income.

Although the account does not reflect the same in so many words, interest in the amount of $47,508.01, resulting from delayed payment of Federal estate tax, was paid by the executors on February 18, 1963, more than six years after decedent's death.

The tax clause in paragraph sixth of the will provides that "all inheritance, estate, transfer, succession and death taxes, Federal and State, of any kind whatsoever, which may be levied upon my estate and on the transfer of any property by reason of my death, whether passing under my Will or not, *shall be paid out of the principal of that* share of my residuary estate passing to the Residuary Trust." This tax clause, of course, does not specifically deal with interest, yet section 3(b) of the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, 20 PS §883, as amended,

does so provide, directing that apportionment of *interest shall be paid entirely from principal.* Section 3(b) provides as follows:

"(b) Present and Remainder Interests. When estate tax shall be apportioned in a situation involving both a present and future interest, the amount apportioned, *including interest and penalties,* shall be paid entirely from principal." (Italics supplied.)

Section 3(c), relied upon by the guardian ad litem, provides as follows:

"(c) Separate Apportionment of Interest and Penalties—Special Circumstances. When the orphans' court shall find that it is inequitable to apportion interest and penalties in the same manner as the principal of the estate tax by reason of special circumstances, it may direct apportionment of interest and penalties in a manner different from principal."

The guardian ad litem has pointed to no particular or special circumstances calling into play the applicability of section 3(c). The only circumstance mentioned is the inability of the accountants to convert the bulk of the estate immediately into cash from nonliquid securities in a closely held corporation in which decedent had a minority interest. The court is satisfied, in light of all the circumstances, that the accountants have properly allocated the payment of interest against principal entirely. . . .